OPINION.
We have sua sponte removed this cause from the accelerated calendar.
{¶ 1} In six assignments of error, defendant-appellant Daniel James Campbell appeals from the conviction and sentence imposed, after a jury trial, for two counts of aggravated arson. The first aggravated-arson count alleged that Campbell had knowingly created a substantial risk of serious physical harm to his girlfriend, Stacy Porter, by pouring lighter fluid on her and igniting it. The second count alleged that he had also knowingly caused serious physical harm to his apartment — an occupied structure — by means of the fire spreading to the dwelling. The jury acquitted Campbell of an attempted-murder charge. The trial court sentenced Campbell to consecutive prison terms, one for ten years and the other for eight years.
 {¶ 2} The trial took place following this court's reversal of a previous jury-trial conviction. See State v. Campbell, 1st Dist. Nos. C-010567 and C-010596, 2002-Ohio-1143. The reversal was predicated upon our determination that a fire-division investigator's expert testimony that Campbell had poured lighter fluid on Porter and set her on fire was not reliable and was therefore inadmissible. See id. The prior defects in the investigator's testimony were not present in the retrial, and we affirm the judgment of the trial court.
 FACTS {¶ 3} In early 2001, Cincinnati fire fighters responded to extinguish a fire at Campbell's apartment. Firefighters found Campbell and Porter in the hallway outside the apartment. Porter was lying on her side and had extensive third-degree burns over her upper body. She was placed in an ambulance. Campbell sat in the front passenger seat and told the driver that "they were mixing some chemicals" and "that he was surprised at how quickly they went up in flames." This began Campbell's frequent changes in the explanation of the fire's cause and origin that he would give to investigators. No fewer than eight times he altered his account of the events, modifying whether he left the apartment in search of a sandwich for Porter, whether he purchased the sandwich or found it in his hallway, whether he had met friends on the trip, whether he had rescued Porter from the flames, and whether he had performed cardiopulmonary resuscitation on her. In none of Campbell's versions of the events was he away from the apartment for more than fifteen minutes.
 {¶ 4} Porter and nine other witnesses testified for the state. Porter's mother testified that her daughter had a low I.Q., suffered from impulse-control disorder, and had a history of psychiatric hospitalizations. Porter, after being found competent as a witness, took the stand and gave a confused and often contradictory account of how the fire had started. She did state that Campbell had poured lighter fluid on her shirt and then ignited it.
 {¶ 5} Lt. Wolf, an experienced fire-division investigator also testified about the origins and cause of the fire. His testimony was that Porter's explanation that Campbell had ignited her clothing was consistent with the results of his investigation. A medical expert testified about the possible causes and the extent of Porter's burns.
 {¶ 6} Fourteen defense witnesses testified at trial; Campbell took the stand in his own defense. He denied starting the fire and could offer no explanation for its cause.
 EXPERT TESTIMONY {¶ 7} In his first assignment of error, Campbell asserts, as he successfully did in the first appeal, that the trial court erred by overruling his objection to the fire investigator's expert opinion on the cause of the fire. Campbell claims that Lt. Wolf's opinion that Campbell had started the fire was based solely on his interview of Porter conducted three weeks after the fire. Since Lt. Wolf relied upon Porter's statement to reach his conclusion about the cause of the fire, Campbell argues that the opinion was admitted without an adequate foundational showing of reliability and was thus not admissible. He asserts that admitting Lt. Wolf's testimony improperly bolstered the credibility of Porter's testimony and improperly usurped the evidence-weighing function of the jury.
 {¶ 8} As noted in the discussion section of State v. Campbell,
expert opinions based upon matters outside the jury's knowledge and expertise that assist the jury in determining a fact in issue or understanding the evidence are admissible at trial. See, also, Evid.R. 702. Lt. Wolf was well qualified as an expert in the area of fire investigation and in the determination of the origin and the cause of fires. Here, Lt. Wolf's experience and training assisted the jury in reaching conclusions about the origin of the fire on the right side of Campbell's couch, that electricity was not a cause of fire, and that if Campbell or Porter had dropped a lit cigarette, it would have taken longer than fifteen minutes to create a fire. These opinions were admissible.
 {¶ 9} In the first trial, Lt. Wolf stated affirmatively and with little explanation, "My opinion is that Danny Campbell had poured lighter fluid on Stacy Porter and set her on fire and she caught the couch on fire." In the retrial, Lt. Wolf's testimony was not based solely upon Porter's statement made to him in the hospital three weeks after the fire. Lt. Wolf testified that he had investigated and had eliminated all natural causes for the fire, including electrical sparking, gas-line leakage, and lightning strike. Based on the physical evidence found at the scene and interviews with the firefighters and other witnesses, Lt. Wolf testified that the burn pattern in the apartment looked like an open-flame fire that had been started by a match, a candle, or a similar item, and that it had originated on the right side of the living-room couch. He eliminated a burning cigarette as a cause of the fire based on reports of Campbell's claim that he had been away from the apartment for only a short time before the fire started. He admitted that he had not seen any burn patterns to indicate that a flammable liquid had been placed on the floor or on the couch. There was no lighter fluid or chemicals found in the apartment.
 {¶ 10} Lt. Wolf then testified that he was able to interview Porter in the hospital after the ventilation tube was removed from her throat about three weeks after the fire. Over objection, Lt. Wolf told the jury that Porter had told him that Campbell "sprayed lighter fluid on her, on her shirt." Lt. Wolf then stated that after the Porter interview "we basically reviewed all our data again. We felt that that was consistent. * * * We look at all that data that we have, and that's very consistent with what we found at that fire scene." Porter's statement to Lt. Wolf was hearsay. It did not qualify as a non-hearsay statement under Evid.R. 801(D)(1)(c), which provides that a statement is not hearsay if the declarant testifies at trial and is subject to cross-examination, and if the statement relates to the identification of a person, soon after perceiving him. See, e.g., State v. McCurdy, 1st Dist. No. C-020808, 2003-Ohio-5518, at ¶ 8. But its admission was not in itself reversible error. Porter had relayed the same events to the jury before Lt. Wolf gave his testimony.
 {¶ 11} Conceding that the statement is hearsay, however, does not disqualify Lt. Wolf's opinion. "Where an expert bases his opinion, in whole or in major part, on facts or data perceived by him, the requirement of Evid.R. 703 has been satisfied." State v. Solomon (1991),59 Ohio St.3d 124, 570 N.E.2d 1118, syllabus. Unlike in the first trial, there was a sufficient basis for the trial court to admit the expert opinion. Lt. Wolf made no unequivocal statement that Campbell had started the fire by igniting Porter's clothing. Rather, he told the jury that the state's theory of the case was consistent with the physical evidence, with Porter's statement and with those of the other witnesses. Based on all the facts Lt. Wolf had gathered, he believed that the cause of the fire was consistent with Campbell pouring lighter fluid on Porter and setting her on fire, and then Porter spreading the fire to the couch. He testified that his conclusion was also consistent with his findings at the scene. Campbell vigorously cross-examined Lt. Wolf, highlighting weaknesses in the investigation and discussing other possible causes for the fire. Unlike in the first trial, Lt. Wolf's testimony was admitted upon an adequate foundational showing that the principles or techniques underlying his testimony were reliable. While his testimony may have bolstered the credibility of Porter's account of how the fire had started, it did not improperly do so. The testimony was reliable and did not usurp the jury's functions. The first assignment of error is overruled.
 ALLIED OFFENSES {¶ 12} In his second assignment of error, Campbell complains that the sentences for the two aggravated-arson counts should have been merged because the arsons were allied offenses of similar import committed with one animus and involving a single course of conduct. See R.C. 2941.25. The aggravated-arson statute, R.C. 2909.02(A), provides, in part, "No person, by means of fire or explosion, shall knowingly do any of the following: (1) Create a substantial risk of serious physical harm to any person other than the offender; (2) Cause physical harm to any occupied structure * * *." In counts two and three, Campbell was charged under subsections (A)(1) and (A)(2), respectively.
 {¶ 13} A strict comparison-of-the-statutory-elements test is now used to determine whether offenses are allied and of similar import. SeeState v. Rance, 85 Ohio St.3d 632, 1999-Ohio-291, 710 N.E.2d 699, paragraph one of the syllabus; see, also, State v. Stern (2000),137 Ohio App.3d 110, 116, 738 N.E.2d 76. If the two offenses each contain a separate element, the offenses are of dissimilar import and the court's inquiry ends — the multiple convictions are proper. See State v.Rance, 85 Ohio St.3d at 636, 1999-Ohio-291, 710 N.E.2d 699.
 {¶ 14} Here, considered in the abstract, aggravated arson as charged in count two required proof that, in setting the fire, Campbell created a substantial risk of serious physical harm to a person. But the conviction for count three required proof that Campbell caused physical harm to any occupied structure. See R.C. 2909.02(A). Aligning the statutorily defined elements of each crime in the abstract, we hold that each offense required proof of an element that the other did not, and that they were not allied offenses of similar import. See State v.Rance, 85 Ohio St.3d at 638, 1999-Ohio-291, 710 N.E.2d 699. Because the offenses were of dissimilar import, separate sentences were permissible. The second assignment error is overruled.
 MOTION FOR A NEW TRIAL {¶ 15} In his third assignment of error, Campbell argues that the trial court erred in overruling his motion for a new trial. See R.C.2945.79 and Crim.R. 33. In support of the motion, Campbell presented the affidavit of Stuart Gregory, in which he stated that Porter had told him, after the trial, that she did not remember how the fire had started.
 {¶ 16} A new trial may be granted on the basis of newly discovered evidence if the movant shows that the evidence "(1) [d]iscloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence." Statev. Petro (1947), 148 Ohio St. 505, 76 N.E.2d 370, syllabus. A motion for a new trial is directed to the sound discretion of the trial court, and the court's decision will not be reversed on appeal in the absence of an abuse of discretion. See State v. Schiebel (1990), 55 Ohio St.3d 71,564 N.E.2d 54, paragraph one of the syllabus.
 {¶ 17} After reviewing the record, including the trial transcript and the affidavit supporting Campbell's motion for a new trial, we conclude that the trial court did not abuse its discretion in ruling that the Petro requirements were not all satisfied. Campbell's argument for a new trial based on newly discovered evidence failed to meet the requirements in two ways: (1) the evidence was merely cumulative, and (2) it tended merely to impeach or contradict the former evidence.
 {¶ 18} At trial, Porter's own testimony about how the fire had started was self-contradictory. The limitations of her testimony were evident both in her direct examination and in the cross-examination by Campbell. The jury had the opportunity to observe Porter's demeanor and to assess her credibility regarding her identification of Campbell as the person who had poured lighter fluid on her and then ignited it. Thus the affidavit in support of the motion for a new trial was both cumulative of Porter's testimony and served to contradict a part of that testimony at the same time. Even with the affidavit, the factual situation remained just as it was at trial. See, e.g., State v. White, 1st Dist. No. C-020645, at ¶ 14. The third assignment of error is overruled.
 WEIGHT AND SUFFICIENCY OF THE EVIDENCE {¶ 19} In two interrelated assignments of error, Campbell contests the weight and the sufficiency of the evidence adduced to support the convictions for aggravated arson. Our review of the record fails to persuade us that the jury, sitting as the trier of fact, clearly lost its way and created such a manifest miscarriage of justice that the convictions must be reversed and a new trial ordered. See State v.Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541.
 {¶ 20} The jury was entitled to reject Campbell's theory that he had not started the fire and, in fact, had saved Porter by dragging her to safety and by performing cardiopulmonary resuscitation on her. Campbell highlighted conflicts in Porter's testimony, including her inconsistent recollections of the fire's cause. Yet, Porter testified that Campbell had poured lighter fluid on her and set her on fire inside his apartment. The photographs and the fire investigator's testimony described heavy damage to the apartment. Evidence of Porter's severe and life-long injuries was undisputed. Medical testimony and the testimony of the fire investigator could not exclude the use of an accelerant in the fire, and they, in fact, offered testimony that the use of an accelerant was consistent with the origin and cause of this fire. The weight to be given the evidence and the credibility of the witnesses were primarily for the trier of fact to determine. See State v. DeHass (1967),10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus. The jury, in resolving conflicts in the testimony, could properly have found Campbell guilty of aggravated arson.
 {¶ 21} The record also contains substantial, credible evidence from which the jury could have reasonably concluded that the state had proved all elements of the charged crimes beyond a reasonable doubt. See Statev. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. The fourth and fifth assignments of error are overruled.
 THE SENTENCES {¶ 22} In his final assignment of error, Campbell claims that the trial court erred in imposing a sentence that was excessive, did not comply with the felony-sentencing guidelines, and was based upon factors outside the guidelines. See R.C. 2053.08(A). The trial court imposed the maximum ten-year prison term on count two, punishable as a felony of the first degree, and the maximum eight-year prison term for count three, punishable as a felony of the second degree. The court ordered that the prison terms be served consecutively.
 {¶ 23} The trial court completed a felony sentencing worksheet, made oral findings and, where required, gave reasons supporting those findings at the sentencing hearing, as mandated by State v. Comer,99 Ohio St.3d 463, 2003-Ohio-4165, 793 N.E.2d 473. The length of the prison terms imposed was within the range provided by statute and thus was not excessive. See R.C. 2929.14(A)(1) and (2).
 {¶ 24} To impose a maximum sentence upon one who is not a major drug offender or a repeat violent offender, a trial court must find that the felon either had committed the "worst forms of the offense" or posed the greatest likelihood of recidivism. See R.C. 2929.14(C); see, also,State v. Lattimore, 1st Dist. No. C-010488, 2002-Ohio-723, at ¶ 26. A trial court sentencing an offender to a maximum prison term must make the required findings and specify on the record its reasons supporting those findings. See R.C. 2929.19(B)(2)(d).
 {¶ 25} Here, the trial court marked on the felony sentencing worksheet that Campbell had committed the worst forms of the offenses. See R.C. 2929.14(C). During the sentencing hearing, the trial court noted that recidivism was likely as Campbell had prior juvenile delinquencies and adult convictions, as well as prior unsuccessful probation or parole periods. See R.C. 2929.12(D). The seriousness of the offenses was demonstrated, the court stated, by the fact that Campbell had befriended the mildly retarded Porter and used that relationship to facilitate the crimes. The court also noted the severe, life-long injuries inflicted on Porter by the arsons. See R.C. 2929.12(B). Because the trial court gave appropriate reasons supporting its finding that Campbell had committed the worst forms of the offenses, it properly imposed the maximum sentence.
 {¶ 26} Next, Campbell contests the trial court's imposition of consecutive sentences pursuant to R.C. 2929.14(E). See R.C. 2953.08(A)(4). A trial court may order multiple sentences to run consecutively where the court finds that the consecutive sentences are necessary to protect the public from future crime or to punish the offender, and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger that he poses to the public. See R.C. 2929.14. Additionally, the court must find at least one of the following: (1) the offender was awaiting trial or sentencing on another offense, was under community control, or was under post-release control for a prior offense; (2) the harm caused was great or unusual and that no single prison term would adequately reflect the seriousness of the offender's conduct; or (3) the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from further crime by him. When imposing consecutive sentences, the trial court must, pursuant to R.C. 2929.19(B)(2), make these findings and provide its reasons for imposing consecutive sentences at the sentencing hearing. See State v. Comer, 99 Ohio St.3d 463, 2003-Ohio-4165,793 N.E.2d 473, paragraph one of the syllabus.
 {¶ 27} The trial court made the required findings and gave reasons that supported those findings. The court also emphasized on its sentencing worksheet and stated at the sentencing hearing that the physical harm that Campbell had inflicted on Porter was so great that it necessitated consecutive sentences. Campbell's claim that the trial court's findings and reasons were insufficient to impose consecutive sentences is simply not supported by the record. See R.C. 2953.08(G)(2)(a).
 {¶ 28} On its felony-sentencing worksheet, the trial court did not make the findings necessary to impose more than the shortest term of imprisonment. See R.C. 2929.14(B). Our review of the sentencing colloquy, however, reveals that the trial court did find, albeit in its justification for maximum and consecutive sentences, that Campbell's crimes were reprehensible and constituted the worst forms of the offenses, and that the public would not be adequately protected by the imposition of even the maximum terms of imprisonment if the terms were to run concurrently. From these findings, made orally at the sentencing hearing, we conclude that the trial court's imposition of nonminimum sentences was justified. See State v. Comer, 99 Ohio St.3d 463,2003-Ohio-4165, 793 N.E.2d 473, paragraph two of the syllabus; see, also, State v. Rowland (May 11, 2001), 1st Dist. No. C-000592. The sixth assignment of error is overruled.
 {¶ 29} Therefore, the judgment of the trial court is affirmed.
Judgment affirmed.
DOAN, P.J., concurs.
PAINTER, J., dissents.