OPINION
{¶ 1} This is an appeal by defendant-appellant, James R. Cody, from a judgment of the Franklin County Court of Common Pleas, following a jury trial in which appellant was found guilty of aggravated arson.
 {¶ 2} On June 30, 2006, appellant was indicted on two counts of aggravated arson. Count 1 of the indictment alleged a violation of R.C.2909.02(A)(1), a first-degree felony, while Count 2 alleged a violation of R.C. 2909.02(A)(2), a second-degree felony. *Page 2 
 {¶ 3} The matter came for trial before a jury beginning January 16, 2007. In June of 2006, Kathy Edwards rented an apartment at 3518 Sanita Court, Columbus, where she resided with her three children and her mother. Prior to June of 2006, Edwards and appellant had been involved in a dating relationship, lasting approximately ten months. After the relationship ended, in March of 2006, appellant continued to phone Edwards. According to Edwards' testimony, the calls were harassing in nature. Sometimes appellant would just hang up, but other times he would threaten her, including threats that her son would be "found dead somewhere," and that her mother was "going to die." (Tr. Vol. I, at 140.)
 {¶ 4} On June 14, 2006, at approximately 4:00 a.m., Edwards heard "a shattering noise like some glass breaking." (Tr. Vol. I, at 142.) The noise awakened everyone in the house, and Edwards heard her daughter scream, "[m]om, mom." (Tr. Vol. I, at 142.) Edwards instructed her mother and children to go outside, and police and fire personnel were called to the residence.
 {¶ 5} Columbus Fire Lieutenant Stuart Tudor, who was dispatched to the scene, observed Edwards and her children standing outside the residence. Edwards told him that she had heard a loud noise downstairs, sounding like a crash or an explosion. As Lieutenant Tudor entered the residence, he smelled an odor of gasoline, and he discovered that an explosion had occurred inside the laundry room, where the smell of gasoline was particularly strong. The lieutenant noticed an "obvious" accelerant had been present in that room. (Tr. Vol. I, at 35.)
 {¶ 6} Other firemen also arrived at the scene, and they pulled out the washer and dryer and noticed gasoline in the dryer vent. Outside the apartment, near an exterior *Page 3 
vent, firemen found a pack of matches and discovered gas residue on the outside of the building. At that point, Lieutenant Tudor called an arson inspector to the scene.
 {¶ 7} Josh Brent, a member of the fire investigation unit of the Columbus Fire Department, arrived at the residence at approximately 5:00 a.m. on the date of the incident. As he entered the apartment, Brent noticed a strong smell of accelerant; he subsequently observed, on the exterior of the building, burn marks around the dryer vent lid. Brent opined that the cause of the damage to the residence resulted from someone pouring an accelerant from the exterior of the dryer vent hole into the dryer vent tube, which was then lit by an open flame, causing an explosion. The explosion caused the laundry room door to be completely blown off its hinges. At trial, the parties stipulated that a liquid sample recovered by investigators from the dryer vent contained gasoline.
 {¶ 8} Brent interviewed Kathy Edwards as part of the investigation, and as a result of that conversation he sent John Throckmorton, a member of the fire department's arson squad, to Edwards' apartment to listen to, and make a recording of, voice messages from Edwards' cell phone. Edwards testified regarding the statements on the recordings, and she identified the voice on the messages as that of appellant. On one of the messages, the voice threatened Edwards that "there was a bullet with my name on it[.]" (Tr. Vol. I, at 147.) In other messages, the caller told Edwards to "get my family and leave," and "that the next time my mom will blow up." (Tr. Vol. I, at 147.) A further message threatened Edwards that she was "going to have two dead kids." (Tr. Vol. I, at 147.) At trial, over the objection of defense counsel, the tape containing the various recorded voice messages was played for the jury.
 {¶ 9} Brent subsequently learned that appellant was working at a construction job site on North High Street, so he traveled to the job site. Brent spoke with appellant's *Page 4 
supervisor, who agreed to allow Brent to interview appellant in an office at the site. Appellant, however, never came into the office. Brent left the office and attempted to find appellant but he was unsuccessful; Brent observed, however, appellant's hard hat lying in the hallway outside the office.
 {¶ 10} At the close of the state's case-in-chief, defense counsel moved for a Crim.R. 29 motion for acquittal, which the trial court denied. Following deliberations, the jury returned verdicts finding appellant guilty of aggravated arson as charged under both counts of the indictment. By entry filed February 5, 2007, the trial court sentenced appellant to eight years incarceration as to Count 1, and seven years incarceration as to Count 2, with the counts to run consecutive to each other.
 {¶ 11} On appeal, appellant sets forth the following five assignments of error for review:
 First Assignment of Error: The trial court committed reversible error by admitting tape recordings of the defendant which were hearsay in that they were not admissions, not relevant, and where the prejudicial effect far outweighed any probative value.
 Second Assignment of Error: The evidence was legally insufficient to support appellant's convictions for aggravated arson.
 Third Assignment of Error: The court erroneously overruled appellant's motions for acquittal pursuant to Criminal Rule 29.
 Fourth Assignment of Error: Appellant's convictions were against the manifest weight of the evidence.
 Fifth Assignment of Error: The two aggravated arson counts are allied offenses of similar import committed with a single animus. The court erred by imposing separate and consecutive sentences for the two offenses when it should have directed the prosecutor to elect which offense conviction should be entered and sentence pronounced. *Page 5 
 {¶ 12} Under his first assignment of error, appellant asserts that the trial court erred in allowing the admission of the tape recording of phone messages containing threats directed at Edwards and her family. Appellant contends the state did not attempt to introduce the tape recordings under Evid.R. 801(D)(2), and, therefore, they should have been deemed hearsay. Appellant also contends that the statements on the tapes do not fall under any of the exceptions to "other acts" evidence under Evid.R. 404(B). Appellant further argues that, even assuming the recordings were admissible, the prejudicial effect on the jury far outweighed any probative value. Finally, appellant challenges the admissibility of the recorded messages on the basis they were not contemporaneous with the incident, but, rather, were initiated several days after the incident.
 {¶ 13} In general, the admission or exclusion of evidence rests within the sound discretion of the trial court, and a reviewing court will not disturb a trial court's evidentiary ruling absent an abuse of discretion. State v. Dixon, Richland App. No. 2004-CA-90,2005-Ohio-2846, at ¶ 21. Evid.R. 801(D)(2)(a) provides in part: "A statement is not hearsay if * * * [t]he statement is offered against the party and is * * * the party's own statement." Pursuant to this rule, "any statement of a party is admissible at trial provided it is offered against the party." State v. Prade (2000), 139 Ohio App.3d 676, 692.
 {¶ 14} Appellant's contention that the state did not seek to introduce the recordings under Evid.R. 801(D)(2) is not supported by the record. The issue as to admissibility of the tape recordings was first raised prior to opening statements. In response to defense counsel's attempt to limit the state from referencing statements on the tape, the prosecutor argued that "statements by a party-opponent can come in if offered by the opposing party." (Tr. Vol. I, at 18.) The trial court indicated it would permit reference to *Page 6 
the messages during opening statement, and further noted that whether or not the "statements made by him * * * were admissions depends upon the circumstances and the evidence presented." (Tr. Vol. I, at 21.) Thus, while the prosecutor may not have specifically cited Evid.R. 801(D)(2), the reference to an admission by a party opponent made clear the basis for the state's argument in support of admission of this evidence.
 {¶ 15} We note there is no dispute that the voice on the tape was that of appellant. As the statements at issue were those of appellant, and offered against him at trial, such statements were not hearsay and were properly admissible. Prade, supra, at 692. Further, because the messages met the requirements of Evid.R. 801(D)(2), their admission was not dependent upon one of the exceptions under Evid.R. 404(B). Moreover, to the extent appellant argues the statements are precluded under Evid.R. 404(B), such evidence was relevant and admissible as it tended to prove identity.
 {¶ 16} Merely because a statement is not hearsay does not ensure its admissibility. Champion v. Dunns Tire Auto, Inc., Mahoning App. No. 00 CA 42, 2001-Ohio-3305, at ¶ 36. Rather, evidence must still be relevant under Evid.R. 401 and 402. Further, pursuant to Evid.R. 403(A), "[although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."
 {¶ 17} As to the general issue of relevancy, this court has previously held that a trial court did not err in allowing the introduction of tapes from a victim's answering machine containing threatening phone messages by the appellant, finding that the tapes "were clearly relevant to support the prosecution's theory that appellant was angry over the break-up of the relationship," and where the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. State v. Dunlap, Franklin App. *Page 7 
No. 03AP-481, 2003-Ohio-6830, at ¶ 21. See, also, Prade, supra, at 685 (finding relevant taped phone calls by appellant as demonstrating a history of jealousy, possessiveness and control over victim). Similarly, the statements in the instant case were relevant to the state's theory that appellant was upset over the break-up of the relationship and that he engaged in a on-going pattern of controlling and harassing behavior toward Edwards and her family, both before and after the incident.
 {¶ 18} Appellant's contention that the taped telephone remarks by appellant were not relevant because they involved statements made after the incident is unpersuasive. See State v. Glossip, Warren App. No. CA2006-04-040, 2007-Ohio-2066 (recorded telephone conversation between appellant and his mother, made approximately two weeks after alleged incident, was admissible as an admission by party opponent under Evid.R. 801(D)(2) and was relevant as evidence of consciousness of guilt). See, also, State v. Taylor, Cuyahoga App. No. 82572, 2003-Ohio-6861
(construing Evid.R. 404[B] in finding that trial court did not abuse its discretion in admitting a threatening e-mail from the appellant made approximately two weeks after crime because it was relevant to appellant's intent regarding the intimidation and telecommunications harassment charges).
 {¶ 19} In the present case, we find that the trial court did not abuse its discretion in admitting the taped statements from the victim's answering machine. Rather, the trial court could have reasonably concluded that the statements were relevant, that they were not too remote in time from the incident, and that the probative value of this evidence was not outweighed by the danger of unfair prejudice.
 {¶ 20} Based upon the foregoing, appellant's first assignment of error is without merit and is overruled. *Page 8 
 {¶ 21} Appellant's second, third, and fourth assignments of error are interrelated and will be considered together. Under these assignments of error, appellant challenges the sufficiency and weight of the evidence in support of his convictions, and argues that the trial court erred in failing to grant his motion for acquittal under Crim.R. 29.
 {¶ 22} In State v. Darrington, Franklin App. No. 06AP-160,2006-Ohio-5042, at ¶ 15-16, this court discussed the applicable standards of review in considering a motion for judgment of acquittal, under Crim.R. 29, and a challenge based upon weight of the evidence, stating as follows:
 A motion for judgment of acquittal, pursuant to Crim.R. 29, tests the sufficiency of the evidence. State v. Knipp, Vinton App. No. 06CA641, 2006-Ohio-4704, at P11. Accordingly, an appellate court reviews a trial court's denial of a motion for acquittal using the same standard for reviewing a sufficiency of the evidence claim. State v. Barron, Perry App. No. 05 CA 4, 2005-Ohio-6108, at P38.
 Sufficiency of the evidence and weight of the evidence are distinct legal concepts. State v. Sexton, Franklin App. No. 01AP-398, 2002-Ohio-3617. In Sexton, at P30-31, this court discussed those distinctions as follows:
 To reverse a conviction because of insufficient evidence, we must determine as a matter of law, after viewing the evidence in a light most favorable to the prosecution, that a rational trier of fact could not have found the essential elements of the crime proven beyond a reasonable doubt. * * * Sufficiency is a test of adequacy, a question of law. * * * We will not disturb a jury's verdict unless we find that reasonable minds could not reach the conclusion the jury reached as the trier of fact. * * * We will neither resolve evidentiary conflicts in the defendant's favor nor substitute our assessment of the credibility of the witnesses for the assessment made by the jury. * * * A conviction based upon legally insufficient evidence amounts to a denial of due process, * * * and if we sustain appellant's insufficient evidence claim, the state will be barred from retrying appellant. * * *
 A manifest weight argument, by contrast, requires us to engage in a limited weighing of the evidence to determine *Page 9 
whether there is enough competent, credible evidence so as to permit reasonable minds to find guilt beyond a reasonable doubt and, thereby, to support the judgment of conviction. * * * Issues of witness credibility and concerning the weight to attach to specific testimony remain primarily within the province of the trier of fact, whose opportunity to make those determinations is superior to that of a reviewing court. * * * Nonetheless, we must review the entire record. With caution and deference to the role of the trier of fact, this court weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether, in resolving conflicts in the evidence, the jury, as the trier of facts, clearly lost its way, thereby creating such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against a conviction. * * *
 {¶ 23} In challenging the sufficiency of the evidence, appellant argues there is no evidence physically linking him to the fire, nor is there evidence placing him near the scene at the time of the incident. Appellant also reiterates his contention, made under the first assignment of error, that the tape-recorded messages were inadmissible.
 {¶ 24} R.C. 2909.02 sets forth the offense of aggravated arson, and states in relevant part as follows:
 (A) No person, by means of fire or explosion, shall knowingly do any of the following:
 (1) Create a substantial risk of serious physical harm to any person other than the offender;
 (2) Cause physical harm to any occupied structure[.]
 {¶ 25} In the present case, the state presented evidence that, if believed, indicated that a fire was intentionally set, through the use of an accelerant, to an occupied structure. The state further presented evidence that the fire caused physical harm to the structure, and the trier of fact could have reasonably concluded that the fire created a substantial risk of serious physical harm to Edwards and her family, who were inside the *Page 10 
residence at the time of the explosion. As noted, however, appellant's primary contention is that there was a lack of evidence tying him to the scene of the crime.
 {¶ 26} While there was no direct evidence by an eyewitness that appellant was outside the apartment complex on the night of the incident, there was sufficient circumstantial evidence linking appellant to the crime. More specifically, in construing the evidence in a light most favorable to the prosecution, as we are required to do in considering a sufficiency challenge, the state presented evidence that: (1) appellant was upset about the fact his dating relationship with Edwards had ended; (2) prior to the incident, appellant had made harassing calls to Edwards' residence which included threats that her son was going to be found dead somewhere, and that her mother was going to die; (3) in the early morning hours of June 14, 2006, there was an explosion inside Edwards' apartment; (4) arson investigators determined that the explosion was caused by someone pouring an accelerant (gasoline) inside a dryer vent, and then igniting it; (5) several days after the incident, a voice identified as that of appellant left various threatening messages on Edwards' answering machine; (6) on one of the messages, the voice yells "mom," and Edwards testified that her daughter had screamed "[m]om, mom," at the time of the fire; (7) another taped message threatens Edwards that "[t]here's a bullet with your name on it"; (8) in another message, the caller indicates he is outside Edwards' apartment "right now," and he admonishes Edwards to "stop ignoring me"; (9) one of the messages contains the threat, "[n]ext time it will be your mama's room that blows up"; (10) a further message contains a threat that "[y]ou better give your soul to Jesus because your ass belongs to me"; and (11) Edwards testified that one of the calls admonished her to "get my family and leave," while another call threatened her that she was "going to have two dead kids." *Page 11 
 {¶ 27} As noted, there was evidence of a fire intentionally set by an accelerant. Further, we have previously found, in addressing appellant's first assignment of error, that the taped messages were admissible, and that appellant's continued threats to Edwards following the incident were relevant to the jury's determination; those messages included appellant mimicking the cries of "mom," which Edwards testified her daughter screamed at the time of the explosion, and his threat that "next time" it will be the mother's room that "blows up." Under Ohio law, circumstantial evidence and direct evidence "inherently possess the same probative value." State v. Treesh (2001), 90 Ohio St.3d 460, 485. Upon review of the evidence in the instant case, we conclude that there was sufficient evidence upon which the trier of fact could have found the elements of the offenses beyond a reasonable doubt, and, thus, the trial court did not err in denying appellant's Crim.R. 29 motion for judgment of acquittal.
 {¶ 28} We note that appellant does not elaborate as to how the convictions were against the manifest weight of the evidence, but agues generally that there was not sufficient credible evidence to establish his guilt. To the extent that appellant may be challenging the testimony of Edwards, the state's primary witness, we note "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Here, it was within the province of the jury to assess the credibility of this witness, and we will not second-guess that determination. Further, upon review of the record, we find that the jury did not lose its way and create a manifest injustice in finding appellant guilty of the charges, and, therefore, we find no merit to appellant's contention that his convictions were against the manifest weight of the evidence. *Page 12 
 {¶ 29} Accordingly, appellant's second, third, and fourth assignments of error are without merit and are overruled.
 {¶ 30} Under the fifth assignment of error, appellant asserts that the trial court erred in imposing separate and consecutive sentences for the two offenses. Specifically, appellant argues that the two aggravated arson counts are allied offenses of similar import that were committed with a single animus.
 {¶ 31} In State v. Wallace, Mahoning App. No. 06 MA 44,2007-Ohio-6226, at ¶ 27, the court discussed the proper analysis in considering whether crimes are allied offenses of similar import, stating as follows:
 The test for determining if two crimes are allied offenses of similar import is a two-prong test. The first prong is whether the elements of the crimes "correspond to such a degree that the commission of one crime will result in the commission of the other." State v. Blankenship (1988), 38 Ohio St.3d 116, 117 * * * Under this analysis, the elements of the crimes are compared in the abstract. State v. Rance, 85 Ohio St.3d 632, 636 * * * "If the elements do not so correspond, the offenses are of dissimilar import and the court's inquiry ends — the multiple convictions are permitted." Id. at 636, * * * citing R.C. 2941.25(B). However, if the elements do so correspond, the court must move to the second prong of the test — whether the crimes were committed separately or with separate animus. Id. at 638-639, citing R.C. 2941.25(B) and State v. Jones, 78 Ohio St.3d 12, 14 * * * If the crimes were committed separately or with separate animus, the defendant may be convicted and sentenced to each of the multiple offenses. Id. at 636. But if it is determined that they were not committed separately or with separate animus then a defendant cannot be convicted and sentenced to each crime separately. Id.
 {¶ 32} In State v. Campbell, Hamilton App. No. C-020822,2003-Ohio-7149, the defendant made the same argument as raised by appellant in the instant case, i.e., that his sentences under R.C.2909.02(A)(1) and (A)(2) should have been merged because they were allied offenses of similar import committed with one animus, and involving a *Page 13 
single course of conduct. The court in Campbell, supra, at ¶ 13-14, rejected this argument, holding:
 A strict comparison-of-the-statutory-elements test is now used to determine whether offenses are allied and of similar import. See State v. Rance, 85 Ohio St.3d 632, 1999 Ohio 291, * * * paragraph one of the syllabus; see, also, State v. Stern (2000), 137 Ohio App.3d 110, 116 * * * If the two offenses each contain a separate element, the offenses are of dissimilar import and the court's inquiry ends — the multiple convictions are proper. See State v. Rance, 85 Ohio St.3d at 636, 1999 Ohio 291, * * *
 Here, considered in the abstract, aggravated arson as charged in count two required proof that, in setting the fire, Campbell created a substantial risk of serious physical harm to a person. But the conviction for count three required proof that Campbell caused physical harm to any occupied structure. See R.C. 2909.02(A). Aligning the statutorily defined elements of each crime in the abstract, we hold that each offense required proof of an element that the other did not, and that they were not allied offenses of similar import. See State v. Rance, 85 Ohio St.3d at 638, 1999 Ohio 291, * * *. Because the offenses were of dissimilar import, separate sentences were permissible. * * *
 {¶ 33} Other courts have similarly held that the offenses at issue are not allied offenses of similar import. See State v. Stambaugh (Sept. 30, 1999), Trumbull App. No. 97-T-0230 ("violations of R.C. 2909.02[A][1] and [A][2] are not allied offenses of similar import * * * Creating a substantial risk of serious physical harm to a person does not necessarily cause physical harm to an occupied structure"); State v.Simon (Nov. 27, 1989), Clermont App. No. CA89-03-010 ("[paragraphs [A][1] and [2] of the aggravated arson statute are clearly not allied offenses of similar import as one involves substantial risk of physical harm to persons and the other involves physical harm to an occupied structure"); State v. Price (Apr. 22, 1993), Cuyahoga App. No. 61891 ("causing physical *Page 14 
harm to an occupied structure and causing the risk of harm to persons therein are not allied offenses of similar import").
 {¶ 34} Based upon the above authority, we find unpersuasive appellant's contention that the trial court erred in the instant case in failing to merge the sentences. Accordingly, appellant's fifth assignment of error is without merit and is overruled.
 {¶ 35} Based upon the foregoing, appellant's five assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.
Judgment affirmed.
BRYANT and BOWMAN, JJ., concur.
 BOWMAN, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution. *Page 1