[Cite as *State v. Hawkins*, 2011-Ohio-5645.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-110291 |
| | | TRIAL NO. B-8903838 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| SHAWN L. HAWKINS, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  November 4, 2011

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Ronald W. Springman* and *Philip R. Cummings*, Assistant Prosecuting Attorneys, for Plaintiff-Appellee,

*The Drew Law Firm Co., LPA, Anthony G. Covatta* and *Robert M. Smyth*, for Defendant-Appellant.

Please note:  We have removed this case from the accelerated calendar.

Per Curiam.

{¶1} Defendant-appellant Shawn L. Hawkins appeals from the Hamilton County Common Pleas Court's judgment overruling his motion for leave to file a motion for a new trial. We affirm the court's judgment.

{¶2} Hawkins was convicted in 1990 upon jury verdicts finding him guilty of two counts of aggravated robbery and four counts of aggravated murder. For the aggravated murders, the trial court imposed death sentences. Hawkins unsuccessfully challenged his convictions in appeals to this court, *State v. Hawkins* (Dec. 18, 1991), 1st Dist. Nos. C-900092 and C-910017, and to the Ohio Supreme Court, *State v. Hawkins* (1993), 66 Ohio St.3d 339, 612 N.E.2d 1227, in a petition for a writ of certiorari to the United States Supreme Court, *Hawkins v. Ohio* (1993), 510 U.S. 984, 114 S.Ct. 486, and in an R.C. 2953.21 petition for postconviction relief. *State v. Hawkins* (June 26, 1996), 1st Dist. No. C-950130, discretionary appeal not allowed, (1996), 77 Ohio St.3d 1486, 673 N.E.2d 145.

{¶3} In 1997, Hawkins petitioned for a writ of habeas corpus in the United States District Court for the Southern District of Ohio. In 2005, after discovery and an evidentiary hearing, the district court conditionally granted the writ on the ground of ineffective assistance of trial counsel in investigating and preparing the case in mitigation. On all other grounds, the court denied the petition. On appeal, the United States Court of Appeals for the Sixth Circuit reversed the judgment of the district court to the extent that it granted the writ on the ineffective-counsel claim and affirmed the judgment on all other grounds. See *Hawkins v. Coyle* (C.A.6, 2008), 547 F.3d 540, certiorari denied (2009), ____ U.S. ____, 130 S.Ct. 553.

{¶4}    In May 2011, Hawkins filed with the common pleas court a motion for leave to file a motion for a new trial, along with his proposed new-trial motion. Following a hearing, the court denied leave, and this appeal followed.[1]

{¶5}    On appeal, Hawkins presents a single assignment of error, challenging the overruling of his motion for leave to file a new-trial motion.  The challenge is untenable.

{¶6}    The Ohio Supreme Court recently determined that "[a] trial court has jurisdiction to decide a [Crim.R. 33(A)(6)] motion for a new trial based on newly discovered evidence in a case in which the death penalty has been affirmed on appeal." See *State v. Davis*, ____ Ohio St.3d ____, 2011-Ohio-5028, ____ N.E.2d ____, paragraph two of the syllabus.  Crim.R. 33(A)(6) permits a trial court to grant a new trial on the ground that "new evidence material to the defense [has been] discovered, which the defendant could not with reasonable diligence have discovered and produced at trial."  The rule requires that the motion be filed either within 120 days of the return of the verdict or within seven days after the trial court, upon "clear and convincing proof that the defendant [had been] unavoidably prevented from discovering the evidence" within the 120-day period, grants leave to file a new-trial motion out of time.  Crim.R. 33(B).

{¶7}    Hawkins sought a new trial 21 years after the verdicts had been returned in his case.  In his motion for leave to file a new-trial motion, he asserted that he had recently discovered evidence in the form of a forensic pathologist's expert opinion that undermines the state's theory of the case, and that he had been

---

[1] In June 2011, while this appeal was pending, the Governor of Ohio commuted Hawkins's death sentences to life in prison without the possibility of parole.

unavoidably prevented from discovering that evidence within 120 days of the return of the verdicts.

{¶8} *The state's theory of the case.* Hawkins was convicted in the shooting deaths of two men, Terrance Richard and Diamond Marteen. On June 12, 1989, at approximately 11:00 a.m., the victims' bodies were found in Richard's car, with Marteen reclined in the front passenger seat and Richard sitting upright in the rear seat on the driver's side. Each man had been shot twice with the same weapon at close range on the left side of the head. The crime-scene investigation led the police to conclude that the car had been moved from the place where the men had been shot to the street where it had been found.

{¶9} Hawkins emerged as a suspect in the murders when police found in Richard's pocket a scrap of paper bearing a pager number traced to Hawkins. Hawkins was subsequently arrested and charged in both murders based on two fingerprints identified as his that the police had lifted from Richard's car and on the statement that eyewitness Henry Brown, Jr., made to the police.

{¶10} At trial, Brown testified that, on June 12, at approximately 12:30 a.m., in the course of leaving a friend's house, he had seen Richard's car parked at the curb, had observed Marteen inert and "laying to the side" in the driver's seat, and had seen Hawkins lean into the backseat of the car and shoot Richard. Other witnesses bolstered Brown's testimony concerning the time, place, and manner of the murders. Various witnesses testified that, between 12:30 and 1:15 a.m., they had heard a series of four gunshots in the vicinity of the street on which Brown claimed Richard's murder had occurred. And Amy Martin, M.D., the pathologist with the coroner's laboratory who had autopsied Marteen and Richard, found the

4

physiochemical changes observed in each man to be consistent with a time of death of 12:30 a.m.

{¶11} *"Newly discovered evidence."* Attached to Hawkins's motion for leave was the April 2011 report of forensic pathologist George R. Nichols, II, M.D. Hawkins's counsel had engaged Dr. Nichols "to evaluate expert testimony provided [at] trial." In his report, Dr. Nichols concluded that neither the physical evidence nor the scientific evidence corroborated the state's theory of the case that Richard and Marteen had been fatally wounded at the same time and in the same place.

{¶12} Dr. Nichols stated that physical evidence in the form of a bullet slug recovered from the front passenger-seat headrest confirmed that Marteen had been shot in the car. But Dr. Nichols concluded that the "Richard shooting occurred in an unproven location," because "no physical evidence * * * corroborate[d] that Richard [had been] shot while in the car," and because the absence of blood stains on the grass or pavement beneath the car when it was found suggested that Richard had not been shot in the car.

{¶13} Dr. Nichols also concluded that Dr. Martin's "time of death determination [was] not scientifically reliable." Dr. Nichols criticized Dr. Martin's methodology in reconciling a seven-degree differential in the victims' core body temperatures and the differences in their states of rigor mortis. Dr. Nichols also criticized Dr. Martin for relying exclusively on observed physiochemical changes, rather than comparing the vitreous fluid found in the victims' eyes, to estimate the times of death. Thus, Dr. Nichols concluded, while the victims "may indeed have been killed contemporaneously," the data provided "no scientific basis" for Dr.

5

Martin's conclusion, and "[s]ome of the data (core temperatures) indicate different times of death."

{¶14} *Unavoidable prevention not demonstrated.* To prevail on a motion for leave to file a motion for a new trial on the ground of newly discovered evidence, the movant must prove by clear and convincing evidence that, within 120 days of the return of the verdict, he did not know that the proposed ground for a new trial existed, and that he could not, "in the exercise of reasonable diligence," have learned of its existence. *State v. Walden* (1984), 19 Ohio App.3d 141, 146, 483 N.E.2d 859 (quoted in *State v. Mathis* [1999], 134 Ohio App.3d 77, 79, 730 N.E.2d 410, overruled in part on other grounds, *State v. Condon*, 157 Ohio App.3d 26, 2004-Ohio-2031, 808 N.E.2d 912, ¶20). In reviewing the trial court's decision on the motion, the reviewing court may not substitute its judgment for that of the trial court and must sustain the trial court's decision if it is supported by competent and credible evidence. See *State v. Schiebel* (1990), 55 Ohio St.3d 71, 74, 564 N.E.2d 54; *Mathis*, 134 Ohio App.3d at 79.

{¶15} Implicit in the common pleas court's judgment overruling Hawkins's motion for leave is the court's determination that Hawkins failed to prove by clear and convincing evidence that he had been unavoidably prevented from timely discovering, and from advancing in a new-trial motion, a claim of actual innocence based on Dr. Nichols's expert opinion. We hold that that the court had before it competent and credible evidence to support its determination.

{¶16} In his motion for leave, Hawkins asserted that he "had no knowledge of the fact that the victims were killed in different locations at different times," that "[h]e is indigent and on death row, and [that] he could only rely on what his

attorneys did for him." Hawkins's counsel stated that they had not been engaged to represent Hawkins until 1997, and then only for the purpose of advancing "legal arguments" in Hawkins's federal habeas corpus proceeding. Their focus, counsel insisted, remained on the habeas corpus proceeding until 2010, when the United States Supreme Court denied certiorari in the matter. Only then, in preparing for the clemency process, was it "appropriate for them to turn back to the facts of the underlying case." Their review of the evidence adduced at trial, in consultation with an attorney experienced in clemency matters, led counsel to question, and to engage a forensic pathologist to reassess, the state's theory that the victims had been murdered at the same place and at the same time.

{¶17} We note at the outset that, by the terms of Crim.R. 33, the relevant time period for a showing of unavoidable prevention is the 120-day period following the return of the verdict in the case. Hawkins's verdicts were returned on January 11, 1990. Accordingly, the common pleas court could not have granted leave upon proof (however clear or convincing) of neglect (however excusable) on the part of counsel engaged in 1997 to prosecute Hawkins's federal habeas corpus petition.

{¶18} Nor does the record support Hawkins's claim that, within the prescribed period, he could not, with reasonable diligence, have learned of, the existence of the proposed ground for a new trial. He was represented by counsel at trial, in his direct appeals, and for purposes of postconviction proceedings. See R.C. 2953.21(I)(1). The autopsies, lab reports, photographs, and physical evidence upon which both Dr. Nichols and Dr. Martin opined had been provided to the defense in discovery prior to trial and had been introduced into evidence at trial. At trial, Dr. Martin testified concerning the differences in the victims' core body temperatures

7

and states of rigor mortis. She also testified concerning variations in the victims' livor mortis, concluding that Marteen's livor mortis showed that he had not been moved postmortem, while Richard's livor mortis showed that he had initially lain on his right side for several hours postmortem and had only later been moved into the upright position in which he was found. The defense extensively cross-examined Dr. Martin concerning her analysis of the data contained in the autopsy and lab reports and her conclusion that the men had been shot at the same time. Dr. Nichols found that the data did not support Dr. Martin's conclusion, and he blamed Dr. Martin's methodology. But Dr. Nichols did not suggest that Dr. Martin did not have available to her the methodology that he would have used; to the contrary, by insisting that Dr. Martin should have employed a different methodology, Dr. Nichols implied that it had been available to her.

{¶19} Because the record supports the common pleas court's decision overruling Hawkins's motion for leave to file a new-trial motion, we overrule the assignment of error. Accordingly, we affirm the judgment of the court below.

Judgment affirmed.

**DINKELACKER, P.J., HILDEBRANDT** and **CUNNINGHAM, JJ.**

 Please Note:

The court has placed of record its own entry in this case on the date of the release of this opinion.

8