[Cite as *State v. Tucker*, 2013-Ohio-2882.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-120446 |
| | | TRIAL NO. 07CRB-12810A |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| MICHAEL L. TUCKER, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Municipal Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  July 3, 2013

*John P. Curp*, City of Cincinnati Solicitor, *Charles A. Rubenstein*, City Prosecutor, and *Lauren M. Yanovsky*, Assistant City Prosecutor, for Plaintiff-Appellee,

*Robert R. Hastings,* Law Office of the Hamilton County Public Defender, for Defendant-Appellant.

Please note:  we have removed this case from the accelerated calendar.

Per Curiam.

{¶1} Defendant-appellant Michael L. Tucker appeals from the Hamilton County Municipal Court's judgment overruling his motion for a new trial. We affirm the court's judgment.

{¶2} On the evening of April 12, 2007, Tucker was stopped by two uniformed city police officers who were responding to a radio broadcast concerning the armed robbery of a pizza-delivery driver by three men. For his conduct during this encounter, Tucker was charged by complaint with the misdemeanors of aggravated menacing and obstructing official business and the felonies of carrying a concealed weapon and having weapons while under a disability. The municipal court transferred those charges to its suspended docket after a Hamilton County Grand Jury returned an indictment charging Tucker, for the same conduct, with three felonies: two counts of carrying concealed weapons and a single count of tampering with evidence.

{¶3} In December 2007, the Hamilton County Common Pleas Court convicted Tucker upon his guilty pleas to tampering with evidence and a single count of carrying concealed weapons. From those convictions, Tucker took no appeal.

{¶4} In August 2008, the municipal court tried and convicted Tucker on the misdemeanor charges of aggravated menacing and obstructing official business. Tucker unsuccessfully challenged his aggravated-menacing conviction in his direct appeal to this court, *State v. Tucker*, 1st Dist. No. C-080285 (Mar. 8, 2009), and in a Crim.R. 33 motion for a new trial, filed with the municipal court in 2012.

{¶5} In this appeal, Tucker advances a single assignment of error challenging the municipal court's judgment overruling his new-trial motion. The challenge is untenable.

*The Trial*

{¶6} The municipal court convicted Tucker of aggravated menacing and obstructing official business upon testimony by one of the uniformed officers who had stopped Tucker and by a police officer who had participated in an internal investigation into their encounter.

{¶7} *Officer Laboy.* Officer Jose Laboy testified at trial that he had observed Tucker, who matched the description of the robbers, walking in the vicinity of the robbery. Officer Laboy instructed his partner, Officer Stephanie Ball, to stop their cruiser in Tucker's path. The officers stepped out of the cruiser, and Officer Laboy drew his gun. Tucker ignored Officer Ball's orders to stop, and continued walking toward Officer Ball's side of the cruiser, until Officer Laboy ordered him to stop. Tucker also ignored Officer Ball's initial command to turn around. According to Officer Laboy, when Officer Ball repeated her command, Tucker, who was wearing a hooded sweatshirt, began "turning," and then, with his right hand, "reached * * * in his hood, and [pulled] a gun from his hood." Officer Laboy ordered Tucker to "stop." Tucker "didn't stop"; instead, "[h]e br[ought] the gun completely to the front of his body * * * and at that time [Officer Laboy made] a decision to shoot him, to stop his threat." The officer shot toward Tucker's "center mass." And Tucker ran.

{¶8} The officers pursued Tucker on foot. Officer Laboy kept his gun out and looked for a trail of blood, "because I know he's armed," and "I know I sh[ot]. At that time I don't know if I hit him."

{¶9} While the officers were chasing Tucker, a police sergeant broadcast an inquiry concerning the gunshot. Officer Laboy tried unsuccessfully to broadcast that he had been the shooter. The officers abandoned their pursuit of Tucker, returned to their cruiser, and, according to Officer Laboy, engaged in the following exchange:

3

Officer Ball asked me * * *, "Did you shoot your firearm?" I said, "Yes, I did. Did you see him with the gun?" She said, "No, I didn't see the gun." I said, "Did you * * * hear my noise, my gun was making noise?" She said, "No."

The sergeant then separated the officers.

{¶10} Other officers soon apprehended Tucker and brought him to Officer Laboy, who identified him. Officers Laboy and Ball were then separately transported to headquarters for an investigation into the shooting.

{¶11} *Internal-investigation officer.* The next day, a handgun was recovered during a search of the area of the shooting. A police officer conducting the investigation into the shooting questioned Tucker about the incident. The officer testified at trial that Tucker had stated that Officers Laboy and Ball had stopped him as he was leaving a neighborhood market. Tucker admitted that he had possessed a handgun. But he insisted that the gun had been, and had remained, tucked in the waistband of his pants until he had thrown it away while fleeing from the officers. Tucker explained to the investigating officer that he had run and disposed of the gun, because he had not wanted the officers to find the gun in his possession.

{¶12} *Tucker.* Tucker also testified at trial. He stated that, as he was leaving the market, a car had approached, and two police officers had jumped out of the car, with weapons drawn. Tucker held a lit cigarette in his right hand and a cell phone in his left hand, and he had a pistol tucked into his belt. When the officers ordered Tucker to stop, he tossed the cigarette and raised his hands, but then turned and ran, disposing of the gun in the process. As he ran, he heard a gunshot. He did not, he insisted, have his gun in the hood of his sweatshirt or show his gun to, or point the gun at, the officers.

*The Motion*

{¶13} Although Tucker styled his motion "Motion for New Trial," the motion may fairly be read to seek both leave to file a new-trial motion, pursuant to Crim.R. 33(B), and a new trial on the ground of newly discovered evidence, pursuant to Crim.R. 33(A)(6). He supported his motion with "newly discovered evidence" in the form of a transcript of Officer Ball's April 13, 2007 "Statement" concerning the April 12 "Police Intervention of Michael Tucker" and a transcription of the video recorded on April 12 by the officers' cruiser's "MVR."

{¶14} *Officer Ball's statement.* Officer Ball's statement reflected her answers to questions posed during the internal investigation into the events of the previous evening. Officer Ball confirmed that she and Officer Laboy had stopped Tucker because he matched the description of the robbery suspects. According to Officer Ball, Tucker "automatically" raised his hands up to his head when he realized he was being stopped by the police. Officer Ball observed a lit cigarette in Tucker's right hand, but saw nothing in his left hand. Tucker complied with Officer Ball's order to turn around, but he was slow to comply with her order to interlace his fingers behind his head. As Tucker slowly moved his hands toward his head, Officer Ball "heard a gunshot coming from [her] right side," and Tucker ran. Officer Ball did not see who had fired the shot, but she "believe[d]" that it had been fired by Officer Laboy. Officer Ball then drew her gun, and the officers pursued Tucker until they received their sergeant's radio broadcast inquiring into the gunshot. Officer Ball stated that she had responded to the broadcast after asking Officer Laboy to confirm her belief that he had discharged his weapon: "I asked * * * did you shoot? And he said yeah. And I said are you okay? And he said yeah, and that was the extent of our

conversation." Officer Ball then broadcast that information and returned with Officer Laboy to their cruiser.

{¶15} *MVR.* The MVR transcript reflects communications between unidentified police officers during and after Tucker's encounter with Officers Laboy and Ball. An officer stated, "[W]e have one running on Oliver Talbert." Another officer responded, "I don't know where he went. He ran. He ran away from us." Another officer broadcast a description of the runner. Another officer then reported that "[t]here was also a gunshot there before they started chasing him. Be advised." And still another officer reported and confirmed that "[t]he gunshot came from my partner."

{¶16} Tucker also supported his motion with the affidavit of defense counsel who had represented him both on his guilty pleas to the felony charges in the common pleas court and in the trial before the municipal court on the misdemeanor charges. Counsel averred that he had, in Tucker's "misdemeanor case[,] * * * asked the State if there were any MVRs pertinent to [the] case," and that he "[had] not [been] told of the existence of any MVRs * * * [or] an Internal Affairs Statement of Officer Stephanie Ball, with exculpatory material, at any point during the pendency of either matter."

{¶17} And Tucker offered copies of the defense's discovery demand, along with the state's initial and supplemental responses to that demand, filed in his common-pleas-court case. In its responses, the state listed Officer Ball as a witness and asserted that it was "unaware of evidence favorable to the Defendant." Counsel did not file a discovery demand in Tucker's municipal-court case.

{¶18} Tucker asserted in his motion that Officer Ball's statement and the MVR constituted newly discovered evidence that he had been unavoidably prevented from

6

discovering until April 2012, when he received the evidence in response to his public-records request. He argued that the evidence was exculpatory on the charge of aggravated menacing, because it confirmed his trial testimony concerning the events of April 12 and contradicted Officer Laboy's testimony that Tucker had drawn or displayed his gun. And he argued that he had been denied a fair trial by the state's violation of its duty to disclose exculpatory evidence.

### No Abuse of Discretion in Denying a New Trial

{¶19} Crim.R. 33(A)(6) permits a trial court to grant a new trial on the ground that "new evidence material to the defense [has been] discovered, which the defendant could not with reasonable diligence have discovered and produced at trial." The rule requires that the motion be filed either within 120 days of the return of the verdict or within seven days after the trial court, upon "clear and convincing proof that the defendant [had been] unavoidably prevented from discovering the evidence" within the 120-day period, grants leave to file a new-trial motion out of time. Crim.R. 33(B).

{¶20} To prevail on a Crim.R. 33(B) motion for leave to file a motion for a new trial on the ground of newly discovered evidence, the movant must prove by clear and convincing evidence that, within 120 days of the return of the verdict, he did not know that the proposed ground for a new trial existed, and that he could not, "in the exercise of reasonable diligence," have learned of its existence. *State v. Walden*, 19 Ohio App.3d 141, 146, 483 N.E.2d 859 (10th Dist.1984) (quoted in *State v. Mathis*, 134 Ohio App.3d 77, 79, 730 N.E.2d 410 [1st Dist.1999], *overruled in part on other grounds*, *State v. Condon*, 157 Ohio App.3d 26, 2004-Ohio-2031, 808 N.E.2d 912, ¶ 20 [1st Dist.]). In reviewing the trial court's decision on the motion, the reviewing court may not substitute its judgment for that of the trial court and must sustain the trial court's decision if it is supported by competent and credible

evidence. *See State v. Schiebel*, 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990); *Mathis* at 79.

{¶21} To prevail on a Crim.R. 33(A)(6) motion for a new trial on the ground of newly discovered evidence, the movant must demonstrate that the evidence "(1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence." *State v. Petro*, 148 Ohio St. 505, 76 N.E.2d 370 (1947), syllabus. A new-trial motion is directed to the sound discretion of the trial court, and the court's decision will not be reversed on appeal in an absence of an abuse of that discretion. *See State v. Williams*, 43 Ohio St.2d 88, 330 N.E.2d 891 (1975), paragraph two of the syllabus.

{¶22} The municipal court "denied" Tucker's motion after hearing arguments. The court did not specify whether it was denying relief in the form of a new trial or in the form of leave to seek a new trial. Nor did the court elaborate on the basis for its decision to deny relief.

{¶23} But the effect of the court's entry was to deny Tucker a new trial. And on the record before us, we cannot say that the court abused its discretion in doing so.

{¶24} The fair-trial guarantee of the Due Process Clause of the Fourteenth Amendment to the United States Constitution imposes upon the state a duty to disclose to a criminal accused evidence material to his guilt or innocence. *Brady v. Maryland*, 373 U.S. 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The duty extends to "any favorable

evidence known to the others acting on the government's behalf in the case, including the police." *Kyles v. Whitley*, 514 U.S. 419, 437, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995).

{¶25} The municipal court tried Tucker upon a complaint charging him with aggravated menacing in violation of R.C. 2903.21, for "pointing a firearm at [Officer Laboy]." The MVR contains no suggestion that Tucker had, during his encounter with Officer Laboy, displayed or brandished a firearm. And Officer Ball, in her statement, related her observation of only a lit cigarette in Tucker's right hand and nothing in his left hand. Thus, the evidence offered by Tucker in support of his *Brady* claim, to the extent that it negates the allegation that Tucker pointed a gun at Officer Laboy, may fairly be said to be evidence probative of Tucker's innocence of the aggravated-menacing charge.

{¶26} But the Due Process Clause is not implicated when exculpatory evidence is disclosed during trial, *State v. Wickline*, 50 Ohio St.3d 114, 116, 552 N.E.2d 913 (1990), as long as the evidence is disclosed "in time for its effective use at trial," *United States v. Smith Grading & Paving, Inc.*, 760 F.2d 527, 532 (4th Cir.1985), and the timing of the disclosure does not otherwise "significantly impair[] the fairness of the trial." *State v. Iacona*, 93 Ohio St.3d 83, 100, 752 N.E.2d 937 (2001). Officer Laboy effectively disclosed at trial the exculpatory evidence provided in Officer Ball's statement and the MVR, when he testified that he had asked Officer Ball, "Did you see him with the gun," and that she had responded, "No, I didn't see the gun." If the defense was surprised by this disclosure, it was then incumbent upon defense counsel to request sanctions for nondisclosure or a continuance to further inquire into the matter. Counsel did not. Nor did counsel pursue the matter on cross-examination of Officer Laboy. Thus, because the favorable evidence was disclosed at trial, and the record will not permit a conclusion that the timing of the disclosure significantly

9

impaired the fairness of his trial, Tucker cannot be said to have been denied due process.

{¶27} In turn, a Crim.R. 33(A)(6) motion for a new trial on the ground of newly discovered evidence must be predicated upon "new evidence material to the defense" that "has been discovered since the trial." *Petro*, 148 Ohio St. 505, 76 N.E.2d 370, at syllabus. Because the exculpatory evidence contained in Officer Ball's statement and suggested by the MVR—that Officer Ball did not see Tucker with a gun—was disclosed by Officer Laboy at trial, we cannot say that the municipal court abused its discretion in denying Tucker a new trial.

{¶28} We, therefore, overrule the assignment of error and affirm the judgment of the municipal court.

Judgment affirmed.

**HENDON, P.J., HILDEBRANDT** and **FISCHER, JJ.**

Please note:

The court has recorded its own entry on the date of the release of this opinion.