[Cite as *State v. Cannon*, 2019-Ohio-3941.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-180474 |
| | | TRIAL NO. B-9507633 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| DEREK CANNON, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Reversed and Cause Remanded

Date of Judgment Entry on Appeal:  September 27, 2019

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Philip R. Cummings*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Ohio Innocence Project, Mallorie Thomas* and *Donald Caster,* for Defendant-Appellant.

**WINKLER, Judge.**

{¶1}   Defendant-appellant Derek Cannon appeals the Hamilton County Common Pleas Court's judgment overruling his Crim.R. 33(B) motion for leave to file a motion for a new trial.  We reverse the judgment upon our determination that the court abused its discretion in denying leave without an evidentiary hearing.

{¶2}   In 1996, Cannon was convicted of aggravated murder for the death of Darrell Depina, a fellow inmate at the Southern Ohio Correctional Facility in Lucasville, Ohio ("Lucasville"), during the April 1993 riot there.   Cannon unsuccessfully challenged his conviction on direct appeal and in postconviction motions filed in 1996, 1998, and 2009.  *See State v. Cannon*, 1st Dist. Hamilton No. C-950710, 1997 WL 78596 (Feb. 26, 1997), *appeal not allowed*, 81 Ohio St.3d 1523, 692 N.E.2d 1024 (1998); *State v. Cannon*, 1st Dist. Hamilton No. C-980389 (Mar. 10, 1999); *State v. Cannon*, 1st Dist. Hamilton No. C-090907 (Jan. 12, 2010).

{¶3}   In 2018, Cannon moved under Crim.R. 33(B) for leave to file a Crim.R. 33(A)(6) motion for a new trial on the ground of newly discovered evidence.  In this appeal, he advances two assignments of error contending that the common pleas court abused its discretion in denying leave without an evidentiary hearing.  We agree.

### *The Trial*

{¶4}   On the afternoon of April 11, 1993, Lucasville inmates seized control of the facility's cellblock "L" ("L-Block"), taking several correctional officers hostage and locking inmates considered "snitches" into cells in the L-6 section of L-Block.  A "death squad" assembled by inmate Keith LaMar gathered bats, shovels, and weight bars, and with their faces concealed in T-shirts, towels, and bandannas, they

proceeded to L-6, where they beat to death a number of inmates, including Darrell Depina.

{¶5} An autopsy showed the cause of Depina's death to be skull fractures and brain injury from two "heavy injuries" to the head. According to the state's witnesses, when the riot began, Cannon was in the prison recreation yard and, with fellow inmates LaMar and Louis Jones, entered L-Block to check on personal belongings in his cell. When rioting inmates barred them from returning to the recreation yard, LaMar successfully bartered for their return in exchange for killing the "snitches" confined in L-6. LaMar, Jones, and Cannon then enlisted and armed other inmates for the death squad and entered L-6. State's witnesses placed Cannon with the death squad in L-6, with a weapon or baseball bat in his hand. Other witnesses testified to seeing Cannon beat Depina about the head and body. Jones testified that he and Cannon had wanted nothing to do with killing "snitches," but that Cannon had later confessed to having struck someone in the head.

{¶6} Cannon took the stand and denied entering L-6. He testified that he had gone alone into L-Block, proceeded to his cell, and changed his shoes. As he was returning to the recreation yard, he walked toward L-6 in search of his friend LaMar, but he continued on to the yard when he saw that the L-6 windows and doors were taped shut. Defense witnesses who had been with Cannon in the recreation yard confirmed that he had gone alone into L-Block to get his shoes and other personal items from his cell and had returned alone ten to 15 minutes later with his shoes. Witnesses who saw Cannon in L-Block testified that he had appeared to have armed himself, as had other inmates in L-Block, with a small club, but that he had not been masked and had not entered L-6 with the death squad. And a witness who was

confined in L-6 testified that Cannon had not been present when the "snitches" were killed.

{¶7}   Jailhouse informant Dwayne Buckley testified in the state's case in rebuttal.  He stated that he had met Cannon in the Hamilton County Justice Center while serving as a porter in Cannon's pod, that they had discussed the Lucasville riot, and that Cannon had confessed to being part of a group who had tortured and killed "a guard" and shanked a "white guy" in another cell.  Cannon, Buckley insisted, declared that he would "beat" the charges and avenge himself on any "snitches" who had implicated him.  Buckley stated that he had reported Cannon's confession because he feared for his safety and the safety of others after an argument between the two had escalated into threats by Cannon against Buckley and his family.

{¶8}   In rebuttal, Cannon testified that any contact with Buckley had been in the presence of two corrections officers.  And Cannon denied threatening Buckley or confessing to torturing and murdering a corrections officer.

### The Motion

{¶9}   In his April 2018 Crim.R. 33(B) motion, Cannon sought leave to file a Crim.R. 33(A)(6) motion for a new trial on the ground of newly discovered evidence or, in the alternative, an evidentiary hearing on his motion for leave.  The motion for leave was supported by Buckley's April 2017 affidavit recanting his trial testimony.  Buckley averred that he and Cannon had discussed the riot, but that Cannon had not confessed to killing the guard.  Buckley stated that he had testified falsely at trial "to get back at Cannon" after they had argued and to take advantage of an "offer[]" by correctional officers at the jail of "some sort of minor incentive, maybe a few days off of [his] sentence," "in exchange for [his] statement."  Buckley asserted that he had not intended to testify following his release from jail and had ignored a subpoena to

appear at Cannon's trial. But he came to court after a police detective had come to his place of work and told him that he "had to testify." The details of that testimony, Buckley insisted, were "made up," and although he remained "angry [with] and wanted to get back at Cannon," he was providing his 2017 affidavit in an effort "to make things right."

{¶10} In opposition to the motion for leave, the state argued that the proposed new-trial motion would not succeed on the merits and supported that argument with an affidavit made by Buckley in May 2018, recanting his April 2017 affidavit. In his 2018 affidavit, Buckley averred that he had testified truthfully at trial, and that his 2017 affidavit had been false and the product of threats against his mother and against his nephew, who had been incarcerated with Cannon at the time.

{¶11} Cannon, in response, argued that the only issue presented by his Crim.R. 33(B) motion was whether he was entitled to leave. He supported that argument with a June 2018 affidavit made by Buckley's brother, denying that he, his son, or his mother had been threatened in connection with Cannon's case, and with an affidavit made by a private investigator, detailing her efforts from late 2016 to April 2017 to secure Buckley's 2017 affidavit. The investigator averred that the Ohio Innocence Project had engaged her in late 2016 to locate and interview Buckley after he had expressed to family members regret about his testimony at Cannon's trial. The investigator spoke with Buckley's brother and then Buckley in early January 2017. Buckley told the investigator that a correctional officer had "coached" him on his statement to police, that that statement had been prompted by "pressure on his family that 'turned into something else,' " and that his reward had been early release. The investigator's subsequent meetings with Buckley provided greater detail and culminated in his April 2017 affidavit.

{¶12} The common pleas court declined to conduct an evidentiary hearing on Cannon's motion for leave and overruled the motion. The court also went on, "in an abundance of caution," to "consider[] * * * Cannon's Motion for New Trial on the merits," to find that his "Motion for New Trial fail[ed] on the merits," and to "overrule[]" his "Motion for New Trial."

### Abuse of Discretion in Denying Leave without a Hearing

{¶13} Crim.R. 33(A)(6) permits a trial court to grant a new trial on the ground that "new evidence material to the defense [has been] discovered, which the defendant could not with reasonable diligence have discovered and produced at trial." A Crim.R. 33(A)(6) motion must be filed either within 120 days of the return of the verdict or within seven days after leave to file a new-trial motion has been granted.

{¶14} Crim.R. 33(B) provides that leave to file a Crim.R. 33(A)(6) motion for a new trial out of time may be granted only upon "clear and convincing proof" that the defendant had, within 120 days of the return of the verdict, been "unavoidably prevented" from discovering, and from presenting in a new-trial motion, the evidence upon which his proposed new-trial motion depends. *See State v. Schiebel*, 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990); *State v. Carusone*, 1st Dist. Hamilton No. C-130003, 2013-Ohio-5034, ¶ 32. A claim of unavoidable prevention must be supported with evidence demonstrating that, within 120 days of the return of the verdict, the movant did not know that the proposed ground for a new trial existed, and that he could not, in the exercise of reasonable diligence, have learned of its existence. *State v. Mathis,* 134 Ohio App.3d 77, 79, 730 N.E.2d 410 (1st Dist.1999), *rev'd in part on other grounds, State v. Condon*, 157 Ohio App.3d 26, 2004-Ohio-2031, 808 N.E.2d 912, ¶ 20 (1st Dist.). The court's decision concerning leave may

not be overturned on appeal if it was supported by some competent and credible evidence. *Schiebel* at 74; *Mathis* at 79.

{¶15} Crim.R. 33(B) does not mandate an evidentiary hearing on a motion for leave. But an evidentiary hearing is warranted when the motion for leave is supported by evidentiary material that, on its face, demonstrates unavoidable prevention. *See Carusone* at ¶ 33.

{¶16} We note at the outset that, under the bifurcated proceeding contemplated by Crim.R. 33, the common pleas court erred when, "in an abundance of caution," it considered and overruled on the merits "Cannon's Motion for New Trial." The rule required the court to decide only the motion before it—Cannon's Crim.R. 33(B) motion for leave to file a new-trial motion. And having overruled the motion for leave, the court could not go on to decide on the merits a motion that was not before it—a Crim.R. 33(A)(6) motion for a new trial on the ground proposed in the motion for leave. *See Carusone* at ¶ 31.

{¶17} Moreover, we conclude that Cannon established an entitlement to an evidentiary hearing on his motion for leave. Throughout his trial, in his direct appeal, and in postconviction motions filed in 1996, 1998, and 2009, Cannon consistently maintained that he had not murdered Delpino. His 2018 new-trial proceedings were also predicated upon his claim of actual innocence. That claim was advanced by the averments contained in Buckley's affidavit, that a falling-out with Cannon, along with law enforcement's promise of early release, had caused him to provide a statement to police and trial testimony that falsely incriminated Cannon in Delpino's death. And Cannon's assertion in his motion for leave to move for a new trial out of time, that he had been unavoidably prevented from timely discovering that evidence and presenting it in a new-trial motion, was supported by the affidavit

7

of the Ohio Innocence Project's investigator, describing her diligence in following information provided in late 2016 by Buckley's family to secure his 2017 affidavit recanting his trial testimony. Thus, Cannon's motion for leave, on its face, showed that he had been unavoidably prevented from timely discovering, and from timely presenting in a new-trial motion, that evidence of actual innocence. We, therefore, conclude that Cannon demonstrated an entitlement to a hearing on the motion.

{¶18} Because Cannon was entitled to an evidentiary hearing on his Crim.R. 33(B) motion for leave to file a new-trial motion, the common pleas court's judgment overruling the motion for leave without such a hearing cannot be said to have been based on a sound reasoning process. We, therefore, hold that the court abused its discretion in overruling Cannon's Crim.R. 33(B) motion. *See State v. Hill*, 12 Ohio St.2d 88, 232 N.E.2d 394 (1967), paragraph two of the syllabus (holding that an abuse of discretion is more than an error of law or judgment, but rather implies that the court's attitude was unreasonable, arbitrary, or unconscionable); *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 14 (quoting *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 [1990] to define an "unreasonable" decision as one that lacks a sound reasoning process). Accordingly, we sustain the assignments of error, reverse the court's judgment, and remand this cause to the court below for further proceedings consistent with law and this opinion.

*Judgment reversed and cause remanded.*

ZAYAS, P.J., and CROUSE, J., concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.

8