[Cite as *State v. Scott*, 2021-Ohio-4160.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|  |  |  |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-200380 |
|  |  | TRIAL NO. B-1302553-A |
| Plaintiff-Appellee, | : |  |
|  |  |  |
| vs. | : | *O P I N I O N.* |
|  |  |  |
| RONELL SCOTT, | : |  |
|  |  |  |
| Defendant-Appellant. | : |  |

Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  November 24, 2021

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Judith Anton Lapp*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*John D. Hill, Jr.*, for Defendant-Appellant.

**WINKLER, Judge**.

{¶1} Defendant-appellant Ronell Scott appeals the Hamilton County Common Pleas Court's judgment denying him leave to file a Crim.R. 33(A)(6) motion for a new trial based on newly discovered evidence. We affirm the court's judgment.

{¶2} In 2013, Scott was convicted in a bench trial of two counts of rape. Evidence was adduced at trial showing that, at the time of the rapes, the 19-year-old victim, described by her mother as "slow" and "susceptible" to others, was living in her mother's house, where Scott, a former neighbor, occasionally visited. The victim testified that in April 2013, Scott showed up at the house after her mother had gone to work. She stated that she had let him in because she thought he was "cool," but that he had, with threats and force, vaginally raped her and then threatened to circulate a video of her showering if she refused to answer his calls. A week later, as the victim was entering her house, Scott followed her in and again raped her. Later that day, the victim reported the rapes to a woman in her Bible study group, who then told their church pastor, who urged the victim to file a police report. Scott admitted at trial to both acts of intercourse, but he insisted that they had been consensual and initiated by the victim.

{¶3} This court affirmed Scott's convictions in his direct appeal, overruling assignments of error challenging his jury waiver and the weight and sufficiency of the evidence to support his convictions. *State v. Scott*, 1st Dist. Hamilton No. C-130818 (Aug. 20, 2014). Scott also unsuccessfully challenged his convictions in a 2015 petition under R.C. 2953.21 et seq. for postconviction relief and the 2020 motion from which this appeal derives, seeking a new trial under Crim.R. 33(A)(6) on the ground of newly discovered evidence.

{¶4} In this appeal, Scott presents a single assignment of error, challenging the denial of leave to file his 2020 new-trial motion. We find no merit to that challenge.

{¶5} A new trial may be granted under Crim.R. 33(A)(6) on the ground that "new evidence material to the defense is discovered, which the defendant could not with reasonable diligence have discovered and produced at trial." A Crim.R. 33(A)(6) motion for a new trial on the ground of newly discovered evidence must be filed either within 120 days of the return of the verdict or within seven days after leave to file a new-trial motion has been granted. Leave to file a Crim.R. 33(A)(6) motion out of time may be granted only upon "clear and convincing proof that the defendant [had been] unavoidably prevented from the discovery of the evidence upon which he must rely[,] * * * within the one hundred twenty day period." *See* Crim.R. 33(B); *State v. Schiebel*, 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990); *State v. Carusone*, 1st Dist. Hamilton No. C-130003, 2013-Ohio-5034, ¶ 32. The court's decision concerning leave may not be overturned on appeal if it was supported by some competent and credible evidence. *Schiebel* at 74; *State v. Mathis,* 134 Ohio App.3d 77, 79, 730 N.E.2d 410 (1st Dist.1999), *rev'd in part on other grounds*, *State v. Condon*, 157 Ohio App.3d 26, 2004-Ohio-2031, 808 N.E.2d 912, ¶ 20 (1st Dist.).

{¶6} In his motion, Scott sought a new trial on the ground that newly discovered evidence demonstrated that he had not "possess[ed] the mental acuity" to make a knowing, intelligent, and voluntary waiver of his constitutional right to a jury trial. He asserted that he had been classified as developmentally handicapped when he started school, had been "functionally illiterate" when he left high school, and had thereafter received Supplemental Security Income for that disability. He argued that his disability had precluded him from alerting the court or counsel to the fact that he was disabled and from assisting in his defense. And he asserted that evidence of his disability had not been available until the end of 2019, when he finally persuaded his brother, from whom he had been estranged since before his arrest, to contact his lawyers.

{¶7} Scott supported his motion with school records detailing his academic and personal struggles. He also provided an affidavit made in March 2020 by the

victim's grandmother, who stated that she knew that both the victim and Scott suffered from "mental acuity issues." And he provided the May 2020 affidavit of his brother, who stated that Scott's violent and abusive behavior had caused his estrangement from his family until late 2019, when his brother responded to Scott's call asking for help in finding a lawyer.

{¶8} The common pleas court conducted a hearing at which no evidence was adduced, but argument was heard, on the matter of leave to file a motion for a new trial out of time. The court denied leave upon its determination that Scott failed to demonstrate that he had been unavoidably prevented from timely discovering and presenting in a new-trial motion his 1992 and 1993 school records.

{¶9} Thus, unavoidable prevention was the determinative issue in the proceedings below. On that issue, Scott offered evidence in the form of school records and the affidavits of his brother and the victim's grandmother. And he argued that that evidence demonstrated an intellectual disability and family circumstances that, until 2019, left him unable to advocate for himself with regard to the disability or to make a knowing and intelligent jury waiver.

{¶10} But the record of the proceedings leading to Scott's rape convictions show that, at the time of his trial, he was not unfamiliar with the criminal-justice process and clearly comprehended the significance of critical aspects of that process. Before trial, Scott declined the state's plea offer for the reason that he was not guilty of the offenses. He executed the jury waiver, and he acknowledged in open court that the signature on the jury waiver was his. On direct examination, he testified that he had a felony weapons conviction, that he was on community control for a felony drug offense, and that a community-control violation was then pending. He also testified that he had resisted having his blood drawn for DNA testing, because the affidavit for the search warrant was "supposed to be signed," but did not bear the required signature. On cross-examination, he admitted to multiple felonies and crimes of dishonesty over the previous ten years, including weapons and theft offenses. He

testified that he had not graduated from high school, and that he had been "kicked out" of school in the 11th grade because he was "in trouble a lot" and did not do homework. He also testified that he supported himself and his three children with wages from temporary work and Supplemental Security Income. He stated that his mother had applied for Supplemental Security Income on his behalf, and that he understood that the checks were for a "disability," but that he did not "really know why." He admitted that he knew the victim's mother's daily schedule and had gone to the victim's home to have sex with her when he knew her mother would not be there. He admitted to eluding apprehension when he was told that a police vehicle was in front of the victim's house. He was charged with obstructing justice for sending his nephew to the victim's house to intimidate the victim and her mother, and his attempts at intimidation resulted in the issuance of a number of protection orders. He also filed pro se a postconviction petition and a postconviction motion to vacate or stay court costs and fines.

{¶11} The trial record may fairly be read to contradict evidence offered in support of Scott's claim that he suffered from an intellectual disability that prevented him from timely discovering and presenting in a new-trial motion, the evidence upon which his new-trial motion depended. Thus, the common pleas court's decision denying leave to move for a new trial was supported by some competent and credible evidence. Accordingly, we overrule the assignment of error and affirm the court's judgment.

Judgment affirmed.

**BERGERON, P.J.,** and **BOCK, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.

5